IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN MUIR HEALTH, a California non-profit public benefit corporation,<br><br>Plaintiff,<br><br>v.<br><br>USAble MUTUAL INSURANCE COMPANY d/b/a BlueAdvantage Administrators of Arkansas, an Arkansas non-profit mutual benefit corporation, WAL-MART STORES, INC., ASSOCIATES' HEALTH AND WELFARE PLAN, and DOES 1 through 24, inclusive,<br><br>Defendants.<br>                                    / | No. C 15-05730 WHA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |

## INTRODUCTION

In this action for breach of contract arising out of treatment rendered to a member of an ERISA plan, defendants moved to dismiss. For the reasons stated below, defendants' motion is **GRANTED IN PART AND DENIED IN PART**.

## STATEMENT

Plaintiff John Muir Health operated John Muir Health Center, a hospital with locations in Walnut Creek and Concord. In 2013, John Muir entered into a facility agreement with third-party Blue Cross of California, which provided that John Muir would render medically necessary care at discounted rates to individual enrollees of Blue Cross's affiliate health plans and enrollees in plans operated by "Other Payors" as defined in the agreement.

Article I of the John Muir's agreement with Blue Cross defined "Other Payors" as "persons or entities utilizing the network(s)/managed care network(s)/plan programs pursuant to an agreement with Blue Cross or an affiliate, including without limitation other Blue Cross and/or Blue Shield Plans that are not affiliates, and employers or insurers providing health benefit plans pursuant to insured, self-administered or self-insured programs" (Amd. Compl. ¶ 17). Section 2.22 of that agreement provided that "when the Managed Care Network is utilized by an Affiliate or Other Payor, services will be provided to insured beneficiaries of that Other Payor in accordance with the terms of the Blue Cross Contract and Other Payor shall compensate Facility in accordance with the rates as set forth in the Blue Cross Contract" (*id.* ¶ 18).[1]

Defendant Wal-Mart Stores, Inc., Associates' Health and Welfare Plan (the "Plan") was a welfare benefits plan pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. 1001, *et seq.* Defendant USAble Mutual Insurance Company d/b/a BlueAdvantage Administrators of Arkansas administered the Plan. The Plan and BlueAdvantage both constituted "Other Payors" within the meaning of John Muir's agreement with Blue Cross (Amd. Compl. ¶ 19).

John Muir admitted a patient with initials K.L.R. for treatment from September 30 through October 1, 2013. Before admitting Patient K.L.R., John Muir "contacted BlueAdvantage to verify Patient K.L.R.'s healthcare eligibility." BlueAdvantage, allegedly acting as the Plan's third-party administrator, represented that Patient K.L.R. was a beneficiary of BlueAdvantage and the Plan and that "authorization was provided to be rendered by John Muir Medical Center to Patient K.L.R." (Amd. Compl. ¶ 30).

John Muir's usual and customary rate for the services rendered to Patient K.L.R. totaled approximately one hundred twenty-five thousand dollars. John Muir timely submitted a bill to

---

[1] The quoted language is taken from the amended complaint. John Muir did not append the agreement with Blue Cross to its complaint, and it did not indicate whether the allegations of the contents of the agreement were direct quotes from the agreement. Defendants were not parties to the agreement with Blue Cross, and they have been unable to acquire a copy of it to date.

2

defendants seeking payment of approximately fifty thousand dollars, which represented the discounted rate applicable under its agreement with Blue Cross. Defendants refused to pay.

John Muir commenced this action in Contra Costa Superior Court in September 2015. In December 2015, defendants removed the action to federal court on diversity jurisdiction and federal question jurisdiction grounds (contending that ERISA preempts all of John Muir's claims). John Muir filed an amended complaint in February 2016. The amended complaint asserts four claims: (i) breach of written contract, (ii) breach of oral contract, (iii) breach of implied-in-fact contract, and (iv) *quantum meruit*.

Defendants now move to dismiss all claims on the basis of conflict preemption under ERISA. Defendants also argue that John Muir has failed to allege essential elements of each of its claims. This order follows full briefing and oral argument.

**ANALYSIS**

Defendants argue that John Muir's claims are preempted by ERISA. They also argue that the complaint fails to allege necessary elements of John Muir's claims. Each argument is addressed in turn.

**1.    ERISA PREEMPTION.**

A state law claim may be subject to "complete preemption" or "express preemption" under ERISA. Defendants argue that John Muir's claims must be dismissed on the basis of express preemption. Section 514(a) of ERISA provides that ERISA shall "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." 29 U.S.C. 1144(a). To determine whether ERISA express preemption applies, our court of appeals considers "whether the state law encroaches on relationships regulated by ERISA, such as between plan and plan member, plan and employer, and plan and trustee." *Blue Cross of California v. Anesthesia Care Assoc. Medical Group, Inc.*, 187 3d 1045, 1053 (9th Cir. 1999) (citations omitted).

Defendants contend that John Muir's state law claims encroach on their relationship with members of the Plan, because John Muir effectively seeks to expand the scope of benefits available to Patient K.L.R. Defendants' arguments rely exclusively on facts not in the

1 complaint and of which judicial notice is not appropriate. Specifically, defendants submit a
2 BlueAdvantage employee's declaration averring that Patient K.L.R. underwent "percutaneous
3 closure of patent foramen ovale," and they submit Plan documents showing that procedure is
4 expressly excluded from coverage by the Plan, inasmuch as it is considered investigational
5 (Martin Decl. ¶¶ 5, 8, Exh. 1). Accordingly, defendants argue, John Muir seeks payment for
6 treatment to which Patient K.L.R. was not entitled under the plan, and a contract claim requiring
7 such a payment would interfere with the relationship between defendants and Plan members.
8 Defendants' arguments, however, are not proper bases for dismissal under Rule 12.

9 John Muir's complaint does not identify the procedure performed on Patient K.L.R., but
10 rather identifies it only as "medically necessary." Nor does the complaint refer to any of the
11 Plan's governing documents. Defendants offer no basis for considering the Plan documents on
12 a Rule 12 motion, nor are the documents the proper subject of judicial notice. Thus,
13 defendants' arguments that rely on the terms of the Plan or the details of Patient K.L.R.'s
14 procedure are not properly raised at this stage. The proper inquiry on the instant motion is
15 whether John Muir's claims encroach on relationships governed by ERISA *on the face of the*
16 *complaint*.

17 The complaint simply alleges that John Muir agreed, via its agreement with Blue Cross,
18 to render medically necessary care to enrollees in Blue Cross's health plan program or so-called
19 "Other Payors" at discounted rates. The complaint further alleges that John Muir in fact
20 rendered medically necessary care to Patient K.L.R. pursuant to the terms of its agreement with
21 Blue Cross and that defendants failed to pay for such care, notwithstanding the terms of John
22 Muir's agreement with Blue Cross. It is true, as defendants argue, that John Muir's own
23 description of the definition of "Other Payors," which "includes employers or insurers
24 providing health benefit plans pursuant to insured, self-administered or self-insured programs,"
25 suggests that any obligations to pay for services rendered to Plan members were circumscribed
26 by the terms of the Plan. But John Muir argues that the treatment rendered was "medically
27 necessary" and that defendants agreed to pay for medically necessary care. Considering only
28 the allegations in the complaint, it is plausible to infer that defendants failed to pay for

4

medically necessary services rendered that *were* covered by the Plan. On its face, such a claim would not be subject to ERISA preemption.

In *Blue Cross of California v. Anesthesia Care Assoc.*, 187 F.3d 1045, 1052–54 (9th Cir. 1999), our court of appeals held that claims by a care provider against a health plan based on a breach of an agreement between the provider and the plan were not preempted, even though the terms of the provider agreements might result in higher costs for ERISA plans and increased co-payment liability. Those economic effects were not sufficient to preempt the state law claims because "[t]he Providers' claims concern[ed] only promises that [the defendant] made as a health care plan provider to its participating physicians. They [did] not touch on [the defendant's] fiduciary status, or any claims that a beneficiary may make against [the defendant] in that capacity." *Id.* at 1054. Nor here.

Defendants seek to distinguish *Blue Cross v. Anesthesia Care* on the grounds that it involved a dispute over the amounts a plan owed to providers pursuant to the terms of a provider agreement, which "[did] not involve construction of the terms of ERISA-covered benefit plans," not whether the plan was liable for the treatment at all, which would. *See id.* at 1053. On the face of the complaint herein, John Muir's claims also do not involve the construction of the terms of the Plan. As stated, the complaint simply alleges that defendants owed money to John Muir and failed to pay. At this stage, it is not clear from the face of the complaint that the Plan documents will need to be interpreted to resolve those claims. Thus, defendants have failed to show that dismissal is appropriate.

This order recognizes, however, that John Muir has artfully avoided appending its agreement with Blue Cross to the complaint and alleged facts vaguely and ambiguously, perhaps as a gimmick to dodge defendants' preemption arguments at the Rule 12 stage. To resolve this question at the threshold, the Court will entertain an early summary judgment motion directed solely at issues relating to ERISA preemption.

2.  **SUFFICIENCY OF THE ALLEGATIONS.**

Defendants also argue that each of John Muir's claims suffers from fatal pleading deficiencies.

5

### A.  Written Contract.

Defendants argue that they were never parties to John Muir's contract with Blue Cross, and so John Muir cannot state a claim for breach of that contract against defendants. John Muir alleged that defendants entered into their own written contract with Blue Cross, whereby they agreed to be bound by the terms of Blue Cross's contract with John Muir and that defendants accepted the benefits of reduced rates negotiated on their behalf as "Other Payors." Thus, John Muir argues, defendants ratified an agreement that Blue Cross entered into on their behalf. At this stage, John Muir has adequately alleged that defendants were bound by the terms of Blue Cross's agreement. Moreover, defendants' alleged conduct is sufficient to state John Muir's third claim for breach of implied-in-fact contract.

### B.  Oral Contract.

John Muir's second claim is for breach of an oral contract. John Muir alleges that defendants entered into an oral agreement to pay for Patient K.L.R.'s treatment when BlueAdvantage authorized John Muir to provide "medical services" by telephone before providing treatment to Patient K.L.R. Defendants argue that John Muir's claim is precluded by the statute of frauds, inasmuch as it is a claim based on an agreement to pay the debts of another. *See* Cal. Civ. Code § 1624(a)(2). Not so. John Muir's claim is for money allegedly owed pursuant to defendants' alleged independent promise that the treatment proposed for Patient K.L.R. would be covered by the Plan. Such a promise is not subject to the statute of frauds. *See* Cal. Civ. Code § 2794(2).

Defendants also argue that the Plan was not a party to the alleged oral contract, only BlueAdvantage was. The complaint alleges that John Muir called BlueAdvantage to confirm Patient K.L.R.'s coverage under the Plan, which BlueAdvantage confirmed in its capacity as a third-party administrator for the Plan. At the pleading stage, John Muir has adequately alleged that BlueAdvantage acted within its authority as an agent for the Plan when it confirmed Patient K.L.R.'s coverage. To the extent BlueAdvantage's authority (and thus, its ability to bind the Plain) was circumscribed by the terms of the Plan documents, that argument is not properly raised at the Rule 12 stage.

6

Defendants' arguments regarding John Muir's claim for breach of oral contract are unpersuasive.

### C. *Quantum Meruit*.

John Muir's fourth claim is for *quantum meruit*. To establish a claim for *quantum meruit* John Muir must plead that it and defendants acted pursuant to an express or implied request for the services rendered and that the services were intended to and did, in fact, benefit the defendant. *Day v. Alta Bates Medical Center*, 98 Cal. App. 4th 243, 248 (Cal. App. 2002). When the services are rendered to a third party, the service must be specifically requested by the defendant. *Id.* at 249.

John Muir has not alleged that either defendant ever *requested* the services allegedly rendered to Patient K.L.R. John Muir offers no more than *ipse dixit* that Blue Advantage's (allegedly as the Plan's agent) assurances that Patient K.L.R. would be covered by the Plan for the proposed treatment constituted a request. This is insufficient. Accordingly, John Muir's fourth claim is **DISMISSED**. Nevertheless, John Muir may seek leave to amend to allege further detail about the circumstances that led to Patient K.L.R.'s treatment, which could plausibly show that defendants in fact *requested* the services.

### CONCLUSION

For the reasons stated above, defendants' motion to dismiss is **GRANTED IN PART AND DENIED IN PART**. Plaintiff's fourth claim for *quantum meruit* is dismissed. Plaintiff may file a motion, filed on the normal thirty-five day calendar, seeking leave to amend within **FOURTEEN DAYS**. Plaintiff's motion must explain how the proposed amendment cures the deficiencies identified above.

Defendants may move for summary judgment on their preemption arguments without prejudice to a later motion directed at the merits of the case by **JUNE 9**. As stated at oral argument on this motion, the parties shall each make available for depositions the individuals that participated in the alleged phone call between John Muir and BlueAdvantage within the next **FOUR WEEKS**. Within **ONE WEEK** of this order, the parties shall state the names of those witnesses and the scheduled date for those depositions.

**IT IS SO ORDERED.**

Dated:   April 21, 2016.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE